Kristina Kruse LORENTZEN and Alan Lorentzen, Plaintiffs,

v.

HONEYWELL HEATING, A DIVISION OF MINNESOTA, MINING AND MANUFACTURING, a Minnesota Corp.; Tessendorf Constructors, a foreign corporation; Tessendorf Service Corporation, a foreign corporation; Anderson Pest Control, an assumed name, a division of Andex, Co., an Illinois corporation; Whitemire Research Laboratories, Inc., a Missouri corporation; the Dow Chemical Company, a Michigan corporation; Fisons Limited, a division of Fisons, Inc., a Maine corporation; Prentiss Drug and Chemical Company, a New York corporation; ICI Americas, Inc., a Delaware corporation; BFC Chemicals, Inc., a Delaware corporation; Kankakee Industrial Supply Co., an Illinois corporation; Honeywell Incorporated, a foreign corporation; Kleen Master; Pennwalt, a Pennsylvania corporation; Hysan Corporation; Bell Laboratories, Inc.; and Mechanical Industries, Inc., Defendants.

No. 87 C 7275.

United States District Court,
N.D. Illinois, E.D.

June 17, 1988.

Dennis E. Carlson, Chicago, Ill., for plaintiffs.

Boyd L. Gates, Carpentersville, Ill., Don M. Sowers, William Johnson, Johnson, Cusack, & Bell, Ltd., Gregory G. Lawton, Modesto, Reynolds & McDermott, Matthew W. Cockrell, Joseph J. Ortego, Rivkin, Radler, Dunne & Bayh, Chicago, Ill., Stanley Pierce, Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., James M. Hofert, Robert A. Kezelis, French, Rogers, Kezelis & Kominiarek, P.C., Michael W. Davis, Stephan V. Beyer, Sidley & Austin, Sheri H. Mecklenburg, Paul L. Langer, McDermott, Will & Emery, Terrence E. Kiwala, Geoffrey A. Bryce, Charles A. LeMoine, Rooks, Pitts & Poust, Thomas D. Graber, Stephen R. Patton, Kirkland & Ellis, Robert M. Chemers, Catherine Coyne Reiter, Steven G. Pietrick, Pretzel & Stouffer, Chartered, Lloyd E. Williams, Jr., Lawrence K. Rynning, Williams & Montgomery, Ltd., John J. Foley, John T. Burke & Associates, P.C., Chicago, Ill., Kenneth D. Morris, Nor–Am Chemical Co., Wilmington, Del., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiffs Kristina Kruse Lorentzen and Alan Lorentzen filed their original complaint in this diversity case on August 18, 1987. They did not serve the numerous defendants with complaints and summonses until late in January, 1988. Because this delay exceeded the 120–day period for service established by Fed.R.Civ.P. 4(j) ("Rule 4(j)"), most of the defendants moved to dismiss without prejudice pursuant to that rule. For the reasons set forth below, these motions are granted and the case is dismissed.

## DISCUSSION

Plaintiffs filed their original complaint on August 18, 1987. On August 20, 1987, plaintiffs moved for leave to file an amended complaint. On August 24, the court granted that motion.

On August 26, this court, unaware that plaintiffs had actually filed an Amended Complaint at Law ("the Amended Complaint") with their August 24 motion, issued an order dismissing the original complaint without prejudice because plaintiffs had failed to plead facts supporting their allegation that complete diversity existed.[1] When this court later received its copy of the Amended Complaint, it discovered that plaintiffs had again failed to adequately plead diversity jurisdiction.[2] Accordingly, on September 14, 1987, this court issued another *sua sponte* order, this time dismissing the Amended Complaint.

On September 25, 1987, plaintiffs filed a Motion to Vacate and Reconsider this court's order of August 26. Plaintiffs also apparently filed another pleading entitled Amended Complaint at Law, although this

---

1. Paragraph 2 of the "Complaint at Law" states: "The plaintiffs are presently citizens of the State of Arizona, and the defendants are all citizens of Illinois or of various states other than Arizona, there being complete diversity of citizenship between the plaintiffs and all defendants...."

   Paragraph 8 of the "Complaint at Law" states: "At the time of filing of this cause, plaintiff is domiciled and living in the State of Arizona as a citizen and resident of said State and all defendants herein are individual defendants or corporate defendants domiciled or residing in States other than the State of Arizona...."

2. Paragraphs 2 and 8 of the "Amended Complaint at Law" filed on August 24, 1987, are identical to paragraphs 2 and 8 of the original complaint.

pleading was not recorded on the docket sheet and does not appear in the official court file. Five days later, plaintiffs filed an Amended Motion to Vacate or Reconsider, in which they expounded upon their earlier motion to vacate, and asked the court to vacate the September 14 dismissal as well.

On the same day, this court issued a minute order informing plaintiffs that they had failed to notice their motion to vacate for the court's motion call, *see* Rule 12 of the Local Rules for District Courts of the Northern District of Illinois, and instructing them to properly notice the motion for the court's consideration. Notice of this order was mailed the next day, October 1; nevertheless, plaintiffs did not file a notice of motion until October 29, and soon thereafter asked this court to continue the hearing on the motion until November 12. The court agreed.

On November 12, plaintiffs' attorney appeared ex parte before the court, explaining that, because plaintiffs had not yet served any defendants, plaintiffs were the only parties formally in the case. The attorney then set about arguing that the court should vacate its September 14 order dismissing the complaint because the order was redundant of the August 26 dismissal. This court, confused as to why it would issue two dismissal orders for the same complaint, asked the attorney for copies of the two orders, but the attorney said that he had forgotten to bring them. The court then asked for the dates of the two orders; again, the lawyer could not assist. Finally, the court asked the attorney if he could, at least, summarize what was going on, and the attorney said he would give it a try.

He explained that he had filed the original complaint on August 18, and that this court had dismissed it *sua sponte* (on August 26) because of the jurisdictional pleading deficiency, and granted leave to amend. He then stated that, some two weeks later, this court had inexplicably issued another order (the September 14 dismissal) which merely repeated what this court had done in the earlier order, except that it did not expressly grant leave to amend the com-

plaint. In other words, plaintiffs' attorney took the position that the September 14 dismissal order was addressed to the *original* complaint, rather than to the *Amended* Complaint. His reason for seeking to vacate the later order, the lawyer said, was to clarify that the September 14 dismissal order, which stated it was "without prejudice" but did not expressly grant leave to file an amended complaint, did not act as an implicit revocation of this court's August 26 grant of leave to file the Amended Complaint. The lawyer did not, however, *explain* to this court that the September 14 order failed to specify which complaint it was dismissing; he merely stated as an unambiguous fact that it had re-dismissed the *original* complaint.

The court, trying to make some sense of what had happened, explained to the lawyer that it enters *sua sponte* orders when complaints fail to properly allege diversity, because of the court's obligation to ensure that complaints adequately plead federal jurisdiction. The court stated that plaintiffs needed only to clean up their pleading in an amended complaint, and the case could proceed.

Plaintiffs' attorney then told the court that he had indeed filed an amended complaint and that his sole concern was with the court's September 14 dismissal order. The lawyer did not explain to the court that he had actually filed two so-called "Amended Complaints at Law," one pre-dating (August 24) and one *post*-dating (September 25) the September 14 order, so that it was possible—indeed likely—that the September 14 dismissal order was addressed to the August 24 Amended Complaint. Instead, he represented to the court that he had filed one complaint, the original complaint, prior to the September 14 order, that the court had issued two dismissals of the same complaint, and that therefore the court should vacate its second order.

Based on plaintiffs' representations, and without the benefit of the opposing viewpoints that properly-served defendants would have provided, this court felt compelled to agree that it had erred in issuing its September 14 dismissal order; two dis-

missals of one complaint are not necessary. Thus, this court granted plaintiffs' motion to vacate and struck the September 14 order. The effect of this order remains, however, somewhat in doubt.

At the time, of course, this court believed that it was merely vacating a redundant order, per plaintiffs' request, thereby leaving intact the August 26 dismissal with leave to file an amended complaint and validating the Amended Complaint which had been filed on September 25. Having reviewed the record and discovered the August 24 Amended Complaint, however, this court finds that this is not so.

If, as plaintiffs insist, the September 14 dismissal was addressed to the August 18 original complaint, then plaintiffs' August 24 Amended Complaint remained valid on September 25 when they filed another Amended Complaint, and plaintiffs needed leave of court to file the latter; the leave to amend granted on August 26 could not suffice because it gave leave to amend the original complaint, and that complaint had already been amended by the August 24 pleading.[3]

Similarly, if, as this court believes, the September 14 order dismissed the August 24 Amended Complaint, then this court's decision to vacate the order was predicated on an erroneous presentation of the facts by plaintiffs' counsel, and that order must itself be vacated. Again, the August 24 Amended Complaint would remain in force as of September 25, and could not be replaced by the September 25 Amended Complaint without leave of this court.

In either case, this court is forced to conclude that plaintiffs lacked permission to file the September 25 Amended Complaint, and that, accordingly, this case should have been dismissed long ago for plaintiffs' failure to properly plead diversity jurisdiction in the August 24 Amended Complaint.

All this discussion might seem like shadow-boxing, in light of plaintiffs' recently-filed Second Amended Complaint, which supercedes all previous complaints and properly alleges jurisdiction.[4] *See Jason's Foods, Inc. v. Peter Eckrich & Sons, Inc.,* 768 F.2d 189 (7th Cir.1985) (retaining jurisdiction over appeal while simultaneously remanding to district court to determine whether, although diversity jurisdiction was not adequately pled in the complaint, it existed). On closer examination, however, the importance of the above factual recitation becomes evident.

In their amended motion to vacate the September 14 order, plaintiffs sought to clarify that the court's August 26 grant of leave to refile remained in force. Apparently, they feared that the September 14 dismissal without prejudice, which lacked such an explicit grant, could present problems for them with respect to the statute of limitations, which had arguably expired on August 26. Thus, rather than simply moving to file a Second Amended Complaint, they moved to clarify and vacate the September 14 order.

Plaintiffs' motivation in this regard was legitimate. Neither the August 26 nor the September 14 dismissal orders expressly stated to which complaint it was addressed, and both post-dated the August 24 filing of the Amended Complaint. Plaintiffs were entitled to seek clarification on the record of the intentions of this court.

Plaintiffs were not, however, entitled to misrepresent the facts in their efforts for a

---

3. Although "Fed.R.Civ.P. 15(a) gives every plaintiff one free amendment," *Stewart v. RCA Corp.,* 790 F.2d 624, 631 (7th Cir.1986), plaintiffs had already amended their original complant, so they needed leave of court to amend again. The fact that plaintiffs had sought leave for their first amendment, rather than merely filing it, does not change this result, since this court was obliged to grant plaintiffs' first request, *id.* Leave or no, the first amendment was plaintiffs' amendment "as a matter of course." The second required this court's permission.

4. Paragraph 2 of the September 25 Amended Complaint provides:

The plaintiffs are citizens of the State of Arizona, the defendant, Tessendorf Mechanical Service, Inc., is a Delaware corporation with its principal place of business in Illinois, and all other defendants are incorporated in states other than Arizona with no other defendant having its principal place of business in the State of Arizona so that there is complete diversity of citizenship between the plaintiffs and all defendants named herein.

clarification favorable to their cause. Plaintiffs' counsel appeared before this court on November 12 without copies of the dismissal orders he was seeking to vacate and without a recollection of the dates of those orders. He argued to this court that he had filed a single complaint which this court had twice dismissed, without informing the court that he had actually filed both an original complaint *and* the Amended Complaint in August, and that the so-called Amended Complaint at Law which he had filed on September 25, and which the court had before it during the hearing, was actually the third complaint filed in this action.

Thus, rather than seeking to enlighten this court as to the procedural history of the case, plaintiffs' attorney opted for obfuscation. He persuaded the court to vacate the September 14 order, not by explaining his statute of limitations problems, but instead by leading the court to believe that it had issued redundant orders. Zealous advocacy is admirable, but it does not justify the conduct of plaintiffs' counsel in this affair.

Still, had the rest of this case proceeded normally, the matter could have remained unnoticed. While the absence of the September 25 Amended Complaint from the file or docket is troubling, plaintiffs and this court had stamped copies of this pleading, this court's August 26 order granting plaintiffs leave to file that complaint was properly recorded, and the September 14 order was vacated and stricken. Plaintiffs needed only to serve the defendants with the September 25 Amended Complaint pursuant to Rule 4, and the case would have proceeded apace.

Unfortunately, plaintiffs failed to take advantage of their opportunity. Instead, they waited until the end of January, 1988, to serve defendants with the Amended Complaint. This service, exceeding by many weeks Rule 4(j)'s mandate that defendants be served within 120 days of the original complaint, prompted defendants to move for dismissal pursuant to that rule.

Ironically, plaintiffs now argue that this court should excuse their delay in serving defendants because the delay was attributable to the errors of *this court.* They argue that this court's "erroneous" order dismissing the complaint on August 26 without prejudice rather than granting them leave to amend, and "erroneous" issuance of the September 14 "redundant" order, left them uncertain as to the status of their case until the November 12 hearing, and that, therefore, the 120 day period should be considered "tolled" during that period. They base their argument on the Seventh Circuit's decision in *Ordower v. Feldman,* 826 F.2d 1569 (7th Cir.1987), which imposed sanctions on a plaintiff who served process on defendants after the 120-day period had expired, and who knew that it did not have good cause for the late service.

According to plaintiffs, that case suggests that, had they served the defendants during the period following the dismissal of their complaint, they might have been vulnerable to Rule 11 sanctions. Thus, they argue, this period should not be counted towards the 120-day time limit. Yet, plaintiffs' argument is fatally flawed.

*Ordower* involved the service of complaint after the 120-day period had expired, where plaintiff did not have a reasonable grounds for arguing that there was good cause for the delay. The case thus stands for nothing more than the proposition that parties who employ litigation tactics without a good faith basis for doing so are subject to sanctions. In this case, plaintiffs had a good faith basis for arguing that their August 24 or September 25 Amended Complaints were valid, so their fear of serving defendants while the status of those complants was in doubt was unwarranted.

Plaintiffs' efforts to blame this court for the ambiguous status of their case between August 26 and November 12 border on outrageous. Although plaintiffs continue to insist that this court had no right to dismiss upon discovering the manifest defects in the jurisdictional allegations of the original and August 24 complaints, clear Seventh Circuit law instructs otherwise. *Jason's Foods, Inc. v. Peter Eckrich &*

*Sons, Inc.*, 768 F.2d at 190 (where jurisdictional defect appeared on the face of the complaint, "[t]he district judge should ... have dismissed the complaint for lack of federal jurisdiction"). Further, if the September 14 dismissal order left plaintiffs somewhat in doubt as to their right to file another amended complaint, their failure to properly notice a motion to clarify or vacate this order for 45 days, and their request to continue the hearing on that motion for another two weeks, can hardly be attributable to this court.

Moreover, even were this court to find that plaintiffs were justified in not serving defendants during the August 24 to November 12 hiatus, they could not prevail here. Rule 4(j) and the cases construing it say nothing about "tolling". The rule provides, in pertinent part:

> *Summons: Time Limit for Service.* If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint *and the party on whose behalf such service was made cannot show good cause why such service was not made within that period,* the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.... (Emphasis added).

*See* Wright & Miller, Federal Practice & Procedure: Civil 2d § 1137, and cases cited therein. Thus, the question is not whether the 120–day period was tolled during certain periods following the commencement of the lawsuit, but instead whether, in view of all the circumstances, plaintiffs can "show good cause why such service was not made within the period." Fed.R.Civ.P. 4(j); *e.g., Del Raine v. Carlson,* 826 F.2d 698 (7th Cir.1987); *Norlock v. City of Garland,* 768 F.2d 654 (5th Cir.1985); *see Barco Arroyo v. Federal Emergency Management,* 113 F.R.D. 46 (D.Puerto Rico 1986) (where counsel discovered three days before the 120–day period expired that he had served the wrong defendant, but did not move for an extension of time to serve pursuant to Rule 6(b), he could not show "good cause" for his late service of the correct defendant).

Had this court failed to rule on the motion to vacate until after, or very shortly before, the 120 days had expired, this court would be inclined to find "good cause" in plaintiffs' late service. While this court disagrees with plaintiffs that serving defendants prior to the November 12 hearing would have left plaintiffs vulnerable to sanctions, their fear in this regard would have been at least colorable. This court would have been hard-pressed to dismiss their cause for this erroneous fear.

But that is not what happened here. Instead, after this court made clear at the November 12 hearing that this case was, and always had been, pending before it, plaintiffs still had over a month to serve defendants within the Rule 4(j) period, yet failed to do so. Furthermore, plaintiffs have not provided this court with an affidavit that their delay was actually the result of the delay in obtaining clarification of the September 14 order. When one examines closely plaintiffs' argument for their delay, the reason for this omission becomes manifest.

If, as this court strongly suspects, the August 26 to November 12 hiatus had nothing whatever to do with the late service, and is merely a post hoc effort by plaintiffs' counsel to cover his own neglect, then plaintiffs are doomed. Inadvertence is simply not "good cause" for failing to abide by Rule 4(j). *Winters v. Teledyne Movible Offshore, Inc.,* 776 F.2d 1304 (5th Cir.1985); *Wei v. State of Hawaii,* 763 F.2d 370 (9th Cir.1985).

If, on the other hand, plaintiffs' counsel *intentionally* delayed serving defendants until after the 120–day period from the commencement of the case had expired, believing he could rely on a "tolling" argument to justify the delay, then not only are plaintiffs doomed, but their lawyer may be as well. Intentionally risking a client's cause is not the sort of conduct that the bar, the court, or potential clients, are likely to view with favor.

In either case, one thing is clear: Plaintiffs cannot establish good cause for failing to serve defendants within 120 days of the

commencement of this lawsuit, so defendants' motions to dismiss must be granted. Furthermore, although it appears that not all defendants moved to dismiss under Rule 4(j), it also appears that none were served within the 120–day time period. Thus, pursuant to the mandatory language of Rule 4(j), the case against them must be dismissed as well.

### CONCLUSION

The case is dismissed without prejudice pursuant to Rule 4(j) of the Federal Rules of Civil Procedure.